## State of Connecticut *v.* Jose J. Gonzalez (14401)

Peters, C. J., Callahan, Glass, Borden and Berdon, Js.

Argued March 25—decision released July 7, 1992

*Deborah L. DelPrete,* deputy assistant public defender, with whom were *Richard Emanuel,* assistant public defender, and, on the brief, *G. Douglas Nash,* public defender, and *Suzanne Zitser* and *Kent Drager,* assistant public defenders, for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Stephen J. Sedensky III,* assistant state's attorney, for the appellee (state).

CALLAHAN, J. The defendant, Jose J. Gonzalez, was charged in a substitute information with the crimes of attempted murder in violation of General Statutes §§ 53a-49 and 53a-54a (a),[1] assault in the first degree

---

[1] General Statutes § 53a-49 provides in pertinent part: "CRIMINAL ATTEMPT: SUFFICIENCY OF CONDUCT; RENUNCIATION AS DEFENSE. (a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

"(b) Conduct shall not be held to constitute a substantial step under subdivision (2) of subsection (a) unless it is strongly corroborative of the actor's criminal purpose. Without negating the sufficiency of other conduct, the following, if strongly corroborative of the actor's criminal purpose, shall not be held insufficient as a matter of law: (1) Lying in wait, searching for or following the contemplated victim of the crime; (2) enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission; (3) reconnoitering the place contemplated for the commission of the crime; (4) unlawful entry of a structure, vehicle or enclosure in which it is contemplated that the crime will be committed;

in violation of General Statutes § 53a-59 (a) (1), carrying a pistol without a permit in violation of General Statutes §§ 29-35 and 29-37 (b), and having a weapon in a motor vehicle in violation of General Statutes § 29-38. The trial court granted the defendant's motion for acquittal on the second count of the information charging assault in the first degree. A jury convicted the defendant of the remaining three counts. The trial court thereafter rendered judgment in accordance with the verdict and sentenced the defendant to a term of imprisonment of twenty years, suspended after fourteen years, and probation for a period of five years on the conviction of attempted murder. The trial court also imposed concurrent terms of four years each on the convictions of carrying a pistol without a permit and having a weapon in a motor vehicle.

The defendant appealed to the Appellate Court claiming that the trial court improperly: (1) failed to investigate or inquire into an allegation of possible juror misconduct; (2) charged the jury concerning the

(5) possession of materials to be employed in the commission of the crime, which are specially designed for such unlawful use or which can serve no lawful purpose of the actor under the circumstances; (6) possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, where such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances; (7) soliciting an innocent agent to engage in conduct constituting an element of the crime."

General Statutes § 53a-54a (a) provides: "MURDER. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

attempt element of the crime of attempted murder; and (3) denied the defendant's motion for judgment of acquittal on the basis that the evidence produced was insufficient to support his convictions.

The Appellate Court determined that there was an inadequate factual record to decide the issue of juror misconduct and remanded the case to the trial court for a hearing to ascertain whether there had, in fact, been juror misconduct and, if so, whether the defendant had been prejudiced.[2] *State* v. *Gonzalez,* 25 Conn. App. 433, 436–40, 596 A.2d 443 (1991). The Appellate Court also concluded that there had been sufficient evidence produced at the defendant's trial to sustain his convictions; id., 443–45; and that the trial court had properly instructed the jury concerning the attempt element of attempted murder. Id., 440–43.

The defendant thereafter petitioned this court for certification. We granted certification limited to the following question: "Did the Appellate Court properly conclude that the trial court properly instructed the jury on attempt liability under General Statutes § 53a-49 (a) (1)?" *State* v. *Gonzalez,* 220 Conn. 928, 598 A.2d 1099 (1991).

We conclude that the Appellate Court was incorrect when it determined that the trial court had properly instructed the jury on attempt liability pursuant to § 53a-49 (a) (1). The jury, in light of the evidence, should have been instructed on attempt liability pursuant to § 53a-49 (a) (2). Because, however, any impropriety in the trial court's instructions concerning attempt liabil-

---

[2] The remand order provided that if the trial court found prejudicial juror misconduct that deprived the defendant of an impartial jury and a fair trial, the judgment was to be set aside and a new trial ordered. If, on the other hand, the trial court found that there was no prejudicial juror misconduct, the trial court's judgment was to be affirmed. *State* v. *Gonzalez,* 25 Conn. App. 433, 440, 596 A.2d 443 (1991).

ity was rendered harmless by other portions of the court's charge, we affirm the Appellate Court's judgment.

The facts leading to the defendant's arrest and conviction are set forth in considerable detail in the Appellate Court's opinion. *State* v. *Gonzalez,* supra, 25 Conn. App. 435–36. For present purposes, suffice it to say that the jury found that the defendant was involved in an altercation with the victim over a traffic incident and shot the victim in the throat with a .25 caliber handgun. The bullet entered the victim's neck under his chin and lodged behind his left ear. The victim was hospitalized for two to four days and suffered a permanent loss of feeling in the left side of his neck.

The substitute long form information that charged the defendant with attempted murder did not specify upon which subdivision of § 53a-49 (a) the defendant's culpability was predicated. The trial court, tracking the information, initially instructed the jury by referring to the entire text of § 53a-49 (a), thereby indicating to the jury the applicability of both subdivisions (a) (1) and (2) to the charge of attempted murder.[3]

During its subsequent deliberations, the jury requested that it be reinstructed as to the definition of attempted murder. The trial court, in responding, first read the statutory definition of murder and explained the element of intent. The court then discussed the requirements necessary for a jury to find that there had been an attempt pursuant to § 53a-49 (a) (1). Next, when the court began to instruct

---

[3] Although the trial court's initial charge was somewhat unclear as to how both subdivisions (a) (1) and (2) of General Statutes § 53a-49 applied to the factual situation revealed at trial, it nevertheless instructed on the elements of both, and clearly instructed the jury that in order to convict the defendant it must find proven beyond a reasonable doubt that he had acted with the specific intent to cause the victim's death.

the jury on the requirements for the finding of an attempt pursuant to § 53a-49 (a) (2) the following colloquy ensued:

"The Court: This second part of the attempt statute provides that a person is guilty of attempting to commit a crime if, acting with the kind of mental state required for the commission of the crime, he intentionally does or omits to do anything which, under the circumstances as he believed them to be, is an act or omission constituting a substantial step in the course of conduct planned to culminate in his commission of the crime. It's charged that way. But I don't think that section applies very well. It says to do with a plan, carrying out, steps.

"Assistant State's Attorney: I'm satisfied.

"The Court: I think if you just limit your consideration to the first part as I've given it to you, you'll have to determine whether the state has met its obligation there. The distinction is that, in this section, it's talking about an act or omission in carrying out a plan to culminate in the commission of the crime of murder. This has more to do with those individual, itemized factors which I have given to you previously. And I think if you look at them, you would disregard them as being in this case. That's lying in wait, enticing. That's not in this case.

"The question here is whether—if this gentleman was at the scene and was involved in the conflict, your question is whether or not he, at that moment, was armed. Knowing that he was and that he knowingly and intentionally pulled out a gun and shot the victim with the intent to take the victim's life, the fact that it wasn't accomplished is the basis of the attempt to commit murder. Okay? You may resume."

The defendant did not object to the trial court's supplemental instructions. He argued on appeal to the

Appellate Court, however, that his constitutional rights had been violated because the trial court's supplemental instructions removed from the jury's consideration subdivision (a) (2) of § 53a-49, which was, in reality, the only subdivision of the statute that had application to the facts of his case. He argues that, consequently, he was convicted of having committed an attempted murder pursuant to a subdivision, subdivision (a) (1) of § 53a-49, for which there was no evidentiary foundation.[4] *State* v. *Gonzalez,* supra, 25 Conn. App. 440–41.

We agree with the defendant that the trial court incorrectly focused the jury's consideration on whether the defendant had committed an attempt pursuant to § 53a-49 (a) (1). An instruction on that subdivision should be given when the evidence indicates that a perpetrator failed to accomplish or complete all the elements of a particular crime solely because the "attendant circumstances" were not as the perpetrator believed them to be, rendering the commission of the crime impossible. Examples of a violation of § 53a-49 (a) (1) would be a pickpocket's failure to complete a larceny because his hand was in an empty pocket, or an attempt by an accused to bribe a juror but mistakenly approaching a nonjuror. *United States* v. *Conway,* 507 F.2d 1047, 1050 (5th Cir. 1975); *Commonwealth* v. *Henley,* 504 Pa. 408, 410–11, 474 A.2d 1115 (1984); W. LaFave & A. Scott, Substantive Criminal Law § 6.3; see Conn. Gen. Stat. Ann. § 53a-49, commission comment (West 1983); see also D. Borden, Connecticut Penal Code Reference Manual (1971) § 5,

---

[4] The Appellate Court determined that, although the defendant did not file a request to charge or take an exception to the trial court's supplemental charge, it would review the defendant's claim under *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973), and *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989), because the defendant's claim "goes to the improper instruction of an element of the crime, and the record is sufficient for such a review." *State* v. *Gonzalez,* 25 Conn. App. 433, 441 n.4, 596 A.2d 443 (1991).

pp. 5-5–5-6. "This is consistent with the general rule applicable to inchoate offenses. Though the circumstances may be misapprehended, if one 'purposely engages in conduct which would constitute the elements of the crime if the attendant circumstances were as he believes them to be' the actor is guilty of criminal attempt. Model Penal Code, § 5.01 (1) (a)." *United States* v. *Brantley,* 777 F.2d 159, 164 (4th Cir. 1985), cert. denied, 479 U.S. 822, 107 S. Ct. 90, 93 L. Ed. 2d 42 (1986).

On the other hand, a court should charge on § 53a-49 (a) (2) when the evidence indicates that a perpetrator has done something which, under the circumstances as he believed them to be, is an act constituting a substantial step in a course of conduct planned to culminate in his commission of a particular crime. In other words, this sub[division] "is directed at the more common attempt situations [wherein] the actor's conduct falls short of the completed offense for reasons other than impossibility." D. Borden, supra, p. 5-6; see *State* v. *Gilchrist,* 24 Conn. App. 624, 638–39 n.9, 591 A.2d 131, cert. denied, 219 Conn. 905, 593 A.2d 131 (1991).

In the present case, where the defendant was charged with attempted murder and the evidence revealed simply an altercation and a shooting, the only relevant question was whether the defendant, with the intent to cause the victim's death, had taken a substantial step, strongly corroborative of his purpose, in a course of conduct planned to culminate in the accomplishment of his intended result. The question to be resolved, therefore, is whether the trial court's charge, although imperfect, adequately conveyed to the jury the necessary elements of attempted murder pursuant to §§ 53a-49 (a) (2) and 53a-54a (a). We conclude that it did.

At the end of its supplemental charge, the trial court explicitly instructed the jury that in order to convict the defendant of attempted murder it must find proven that the defendant was armed, that he knowingly and intentionally produced a gun during his altercation with the victim, and that he shot the victim with the intent to take the victim's life. Those instructions encompassed all the elements necessary to constitute a criminal attempt to commit murder pursuant to §§ 53a-49 (a) (2) and 53a-54a (a). They were, moreover, the last words that the jurors heard prior to resuming their deliberations and, consequently, those words were fresh in their minds when they returned to the jury room. *Arroyo* v. *Jones*, 685 F.2d 35, 39 (2d Cir.), cert. denied, 459 U.S. 1048, 103 S. Ct. 468, 74 L. Ed. 2d 617 (1982); *State* v. *Williams*, 199 Conn. 30, 41, 505 A.2d 699 (1986).

In order to convict the defendant in compliance with the trial court's supplemental instructions, the jury must have found proven beyond a reasonable doubt that the defendant shot the victim with the intent to cause the victim's death. It cannot seriously be argued that if the defendant shot the victim with the intent to cause his death, that the action taken, the shooting of the victim, was not a substantial step in a course of conduct planned, i.e., intended or designed, to culminate in the commission of the crime of murder, which step was strongly corroborative of the defendant's criminal purpose. The fact that the trial court mislabeled the subdivision of § 53a-49 (a) that applied to the factual situation was harmless beyond a reasonable doubt. *State* v. *Golding*, 213 Conn. 233, 240, 567 A.2d 823 (1989).

The judgment of the Appellate Court is affirmed.

In this opinion GLASS and BORDEN, Js., concurred.

PETERS, C. J., with whom BERDON, J., joins, concurring in the judgment. I respectfully disagree with the conclusion that the trial court effectively, although imperfectly, instructed the jury about the necessary elements of attempted murder pursuant to General Statutes §§ 53a-49 (a) (2) and 53a-54a (a). With respect to § 53a-49 (a) (2), the trial court, as the majority opinion notes, expressly charged the jury: "That's not in this case." With deference, I cannot accede to the proposition that this unequivocal instruction was in any way diluted by the court's supplemental instruction about the state's burden of proof with respect to attempted murder, because the supplemental instruction did not advert to either of the relevant subdivisions of § 53a-49 (a). To my mind, the only basis for upholding the defendant's conviction of attempted murder must therefore be that the state adduced sufficient evidence so that a jury could find him guilty, in accordance with the court's instructions, of a violation of § 53a-49 (a) (1). Because I am persuaded that the record demonstrates the existence of such evidence, I concur in the judgment of the court.

"[T]his court has taken the position that '[i]t is essential to any orderly trial that the jury be presumed, in the absence of a fair indication to the contrary, to have followed the instructions of the court as to the law.' *State* v. *Bausman,* 162 Conn. 308, 314, 294 A.2d 312 (1972); *State* v. *Barber,* 173 Conn. 153, 157, 376 A.2d 1108 (1977); *State* v. *Coleman,* 167 Conn. 260, 268, 355 A.2d 11 (1974); *State* v. *Smith,* 156 Conn. 378, 383, 242 A.2d 763 (1968). The majority does not point to anything in the record to show that this well settled principle should not apply in this case . . . . It must be remembered that '[u]nless we proceed on the basis that the jury will follow the court's instructions where those instructions are clear and the circumstances are such that the jury can reasonably be expected to follow them,

the jury system makes little sense.' *Delli Paoli* v. *United States,* 352 U.S. 232, 242, 77 S. Ct. 294, 1 L. Ed. 2d 278 (1957); *Bruton* v. *United States,* [391 U.S. 123, 135, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968)]. That makes good sense to me here particularly where the record shows nothing to the contrary." *State* v. *Couture,* 194 Conn. 530, 570, 482 A.2d 300 (1984) *(Healey, J.,* dissenting), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985); see also *State* v. *Negron,* 221 Conn. 315, 331, 603 A.2d 1138 (1992).

Nothing in the record of this case suggests that the jury did not follow the unambiguous instruction of the trial court that limited the jury's consideration to whether the defendant had committed an attempt pursuant to § 53a-49 (a) (1). The trial court, after discussing § 53a-49 (a) (2), told the jury that "I don't think that section applies very well" and that "[t]hat's not in this case," and instructed it to "just limit your consideration to the first part as I've given it to you." I do not understand by what alchemy this instruction can be converted into a "mislabeled" instruction to the jury to consider the defendant's guilt pursuant to § 53a-49 (a) (2).

I am equally unpersuaded that the court's supplemental instruction that "in order to convict the defendant of attempted murder it must find proven that the defendant was armed, that he knowingly and intentionally produced a gun during his altercation with the victim, and that he shot the victim with the intent to take the victim's life," would have informed the jury that it should redirect its attention to § 53a-49 (a) (2). The majority opinion emphasizes that the supplemental instructions were "the last words that the jurors heard prior to resuming their deliberations and, consequently, those words were fresh in their minds when they returned to the jury room." This reasoning suggests that rather than deliberately disregarding the court's

more specific instructions, the jury would simply have forgotten instructions that it had heard only thirty seconds or so earlier. It seems to me altogether more likely that, consistently with the facts of record, the jury understood, remembered and faithfully followed the trial court's instructions in toto, and convicted the defendant under § 53a-49 (a) (1).

The sufficiency of the evidence to sustain the defendant's conviction of attempted murder must, therefore, stand or fall by comparing the evidence adduced at trial with the evidentiary requirements of § 53a-49 (a) (1). No authority or analysis supports the majority opinion's implicit conclusion that, because the conduct with which the defendant was charged plainly violated § 53a-49 (a) (2), it could not also have violated § 53a-49 (a) (1). Our case law is to the contrary. Although the two subdivisions of the attempt statute are distinct, there is room for overlap between them in certain cases. "Once the mental state required under the attempt statute in § 53a-49 (a) is found, there are two sub[divisions] of that statute under which a defendant may be found guilty. Under the evidence, the jury could have found the defendant guilty under both, although one would have been sufficient." *State* v. *Green,* 194 Conn. 258, 275, 480 A.2d 526 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 964, 83 L. Ed. 2d 969 (1985). This court has held that a single action may violate both subdivisions of § 53a-49 (a). See id., 276–77; see also *State* v. *Gilchrist,* 25 Conn. App. 104, 110–11, 593 A.2d 507, cert. denied, 220 Conn. 905, 593 A.2d 970 (1991).

On the evidence in the present case, the jury was entitled to conclude that, at the moment he fired the shot, the defendant mistakenly believed that his gun was pointed at a vital part of the victim's neck, so that pulling the trigger would suffice to complete the crime by killing or inflicting a mortal wound on the victim. If the jury was entitled to infer from the defendant's

actions that he intended to kill his victim—a finding that would be required in order to convict under either subdivision of the statute—it was also entitled to infer that, before pulling the trigger, the defendant believed that the single shot would be fatal. Afterward, the defendant appears to have perceived no need to fire another. The jury could reasonably have found that the defendant's act was *both* an attempt based on mistake of fact in violation of § 53a-49 (a) (1), because he was mistaken about the attendant circumstances, *and* a substantial step toward completion of the crime in violation of § 53a-49 (a) (2), because the victim might well have died of his wound had he not received prompt medical treatment. Although the trial court should not have withdrawn § 53a-49 (a) (2) from the jury's consideration, the defendant cannot complain of an instruction that was more favorable to him than the one to which he was entitled.

Because a jury is presumed to have followed its instructions, and because I agree with the Appellate Court that the evidence was sufficient to support a conviction under § 53a-49 (a) (1), I respectfully concur in the result.