## STATE OF CONNECTICUT *v.* JEFFREY PERRY
## (AC 16716)

Foti, Schaller and Spear, Js.

Argued December 17, 1997—officially released March 17, 1998

*Suzanne Zitser*, assistant public defender, for the appellant (defendant).

*Lisa Herskowitz*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *James Clark*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

SPEAR, J. The defendant, Jeffrey Perry, appeals from the judgment of conviction, rendered after a jury trial, of (1) murder in violation of General Statutes § 53a-54a, and (2) carrying a pistol without a permit in violation of General Statutes § 29-35.[1] The defendant claims that the state failed to prove beyond a reasonable doubt the essential element that the pistol that the defendant was allegedly carrying had a barrel less than twelve inches in length, and that the trial court improperly (1) admitted a witness' unreliable, tape-recorded statement to the police as substantive evidence, (2) admitted testimony of the defendant's alleged flight following the shooting as consciousness of guilt evidence, and (3) precluded the defendant from eliciting relevant testimony regarding his defense of mistaken identification. We reverse the judgment of the trial court with respect to the conviction of carrying a pistol without a permit. We affirm the judgment in all other respects.

---

[1] General Statutes § 29-35 (a) provides in relevant part: "No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same issued as provided in section 29-28. . . ."

The jury reasonably could have found the following facts. On the evening of March 5, 1992, police arrived at the Oasis nightclub on Winchester Avenue in New Haven in response to a shooting. The street entrance to the club opened into a long, narrow hallway, approximately twenty-eight feet in length, leading to an interior door to the bar. The victim, Kenneth Hazard, was lying in the hallway with a gunshot wound to his chest.

Earlier that evening, Michael Faison, Earl Holloway and the victim, all friends, had started to leave the bar when the victim turned and walked back toward the interior door to the bar. The defendant then walked from the bar into the hallway, spoke to the victim, pulled a gun out of his jacket and shot him.

The defendant was found guilty of the charges of murder and carrying a pistol without a permit, but was acquitted of attempted first degree assault in violation of General Statutes §§ 53a-49 and 53a-59 (a) (1). This appeal followed.

I

The defendant first claims that the evidence presented at trial was insufficient to support his conviction under § 29-35 of carrying a pistol without a permit.[2] Specifically, he asserts that the state did not prove beyond a reasonable doubt that the barrel of the gun was less than twelve inches in length, an essential element of that crime.[3] We agree.

---

[2] The defendant seeks review of this unpreserved claim under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). We will review this claim "[b]ecause there is abundant authority that . . . claims of insufficiency of the evidence fall within the ameliorative penumbra of *State* v. *Golding*, supra [233] . . . ." (Citation omitted.) *State* v. *Estrada*, 26 Conn. App. 641, 659, 603 A.2d 1179, cert. denied, 221 Conn. 923, 608 A.2d 688 (1992).

[3] General Statutes § 29-27 provides: "The term 'pistol' and the term 'revolver', as used in sections 29-28 to 29-38, inclusive, mean any firearm having a barrel less than twelve inches in length."

The standard for reviewing sufficiency of the evidence claims is well settled in this state. "When reviewing a sufficiency of the evidence claim, our courts apply a two-prong test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Foster*, 45 Conn. App. 369, 375, 696 A.2d 1003, cert. denied, 243 Conn. 904, 701 A.2d 335 (1997); see *State* v. *Sivri*, 231 Conn. 115, 126, 646 A.2d 169 (1994); *State* v. *Torres*, 47 Conn. App. 205, 219, 703 A.2d 1164 (1997); *State* v. *Roy*, 38 Conn. App. 481, 488, 662 A.2d 799 (1995), cert. denied, 237 Conn. 902, 674 A.2d 1333 (1996).

We recognize that where a violation of § 29-35 is charged, "the length of the barrel is . . . an element of [the] crime and must be proven beyond a reasonable doubt." *State* v. *Hamilton*, 30 Conn. App. 68, 73, 618 A.2d 1372 (1993), aff'd, 228 Conn. 234, 636 A.2d 760 (1994). To that end, the state argues that the jury should have been able to invoke its common sense in assessing the circumstantial evidence that was presented regarding the length of the gun barrel.

The state relies principally on *State* v. *Williams*, 231 Conn. 235, 251–52, 645 A.2d 999 (1994), for the proposition that the state need not present direct numerical evidence regarding the length of a gun barrel, but may rely solely on circumstantial evidence of length to support a conviction.[4] In *Williams*, despite the fact that the gun that had been the murder weapon was never

---

[4] In so holding, our Supreme Court overruled its previous position in *State* v. *Brown*, 173 Conn. 254, 260, 377 A.2d 268 (1977), that direct numerical evidence regarding the length of a gun barrel was necessary to support a conviction for carrying a pistol without a permit.

introduced into evidence, there was eyewitness testimony that the defendant "pulled a 'small handgun' out of his 'waist length jacket.' Further, the jury heard from . . . other eyewitnesses to the shooting, who described the article of clothing from which the defendant pulled the gun as a 'beige, sweater-like coat' and a 'dark sweater.' " Id., 252. The *Williams* court concluded that "[f]rom this evidence the jury could have reasonably inferred that the handgun that the defendant pulled from the pocket of a small sized outer garment that he wore was less than twelve inches long and that . . . the state had proved this element . . . beyond a reasonable doubt." Id. Moreover, the court noted that "it is extremely unlikely that anyone would describe as 'small' a handgun that had a barrel of one foot or longer." Id.

The state cites several more cases in support of its contention that courts in this state have upheld convictions based solely on circumstantial evidence of gun barrel length. See *State* v. *Crosby*, 36 Conn. App. 805, 821, 654 A.2d 371, cert. denied, 232 Conn. 921, 656 A.2d 669 (1995) (testimony that gun not as long as piece of paper shown to witness that was less than twelve inches in length); *State* v. *Gonzalez*, 25 Conn. App. 433, 444, 596 A.2d 443 (1991), aff'd, 222 Conn. 718, 609 A.2d 1003 (1992) (small caliber gun pulled from defendant's back pocket). Our review of these cases, however, reveals that they, unlike the present case, evinced at least a modicum of descriptive evidence regarding either the barrel length or the gun itself.

Here, the gun was not introduced into evidence and the only descriptive evidence of the gun came from the testimony of prosecution witness Faison. According to Faison, who allegedly was standing in close proximity to both the defendant and the victim immediately prior to the shooting, the gun was "black" and the defendant

pulled the gun "out of his jacket or coat." While circumstantial evidence concerning the length of the gun barrel may sustain a conviction under the statute, we are persuaded that some measure of descriptive evidence from which the jury may properly infer the barrel length is necessary in order for the state to satisfy its burden of proof. Because of the dearth of evidence in this case with respect to the gun and the length of its barrel or circumstances permitting an inference as to length, we conclude that the evidence was insufficient to sustain the defendant's conviction on the charge of carrying a pistol without a permit.[5]

## II

The defendant next claims that the trial court improperly admitted as substantive evidence the prior inconsistent tape-recorded statement of prosecution witness Bobby Kelly. The defendant asserts that in addition to the circumstances under which Kelly gave his statement to the police, the fact that Kelly neither signed nor acknowledged giving the statement rendered it unreliable and therefore inadmissible according to the principles enunciated in *State* v. *Whelan*, 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986). We are unpersuaded.

In *Whelan*, our Supreme Court abandoned the traditional view that prior inconsistent statements are admissible for impeachment purposes but are not admissible

---

[5] Faison testified that he was standing only six to eight inches from the defendant when the defendant drew the gun from his jacket, but there was no testimony as to the distance between the defendant and the victim. There was no testimony that the defendant pointed the gun at Faison, thereby allowing an inference that the barrel was less than twelve inches. A demonstration was performed showing the respective positions of Faison, the defendant and the victim, but the record is devoid of any testimony from which the length of the gun barrel could be inferred. The state argues that the defendant had the burden of eliciting testimony as to the distances shown by the demonstration. We disagree because the state had the burden of proof on the essential element of barrel length.

as substantive evidence. Id., 748–53. By rejecting the traditional view, the court effectively adopted an exception to the hearsay rule. "[T]he substantive use of prior written inconsistent statements, signed by the declarant, who has personal knowledge of the facts stated, when the declarant testifies at trial and is subject to cross-examination"; id., 753; was allowed, the court reasoned, because "when the declarant is in court, under oath, and subject to cross-examination before the [fact finder] concerning both his out-of-court and in-court statements, the usual dangers of hearsay are largely nonexistent  . . . ." (Internal quotation marks omitted.) Id., 750–51.[6]

At trial, Kelly reluctantly took the stand and testified that he had been sleep deprived, intoxicated and high on crack cocaine when he gave his statement to the police, and that he would have said anything to obtain leniency regarding the prior pending felony charges against him. While the defendant asserts on appeal that these circumstances bear on the inherent unreliability of Kelly's statement, that claim was never made by the defendant at trial. Instead, the defendant's objection at trial regarding the admissibility of Kelly's statement was that because Kelly did not sign or acknowledge the statement that he gave to the police, it did not satisfy the reliability prerequisite under *Whelan.*

Our review of the transcript reveals that Kelly, while on the stand testifying, identified the voice on the tape-recorded statement as his own. Our Supreme Court has previously held that "the general rationale of *Whelan*

---

[6] The *Whelan* court carefully circumscribed its holding to allow for the substantive use of only those statements that satisfied the prescribed indicia of reliability. The court noted that it was "unwilling to abrogate, without adequate precautions, the traditional view prohibiting [the] substantive use [of prior inconsistent statements]. . . . [S]ome out-of-court declarations lacking [the requisite] safeguards of reliability and accuracy must continue to be governed by the hearsay rule." *State* v. *Whelan,* supra, 200 Conn. 752.

concerning written statements also applies to tape-recorded statements . . . [and] the requirement that such statements be signed is unnecessary because the recording of the witness' voice imparts the same measure of reliability as a signature." (Citation omitted.) *State* v. *Woodson*, 227 Conn. 1, 21, 629 A.2d 386 (1993). We therefore find no merit in this claim.

### III

The defendant next claims that the trial court both improperly admitted the testimony of Gregory Atkinson regarding the defendant's alleged flight following the shooting and instructed the jury that such testimony regarding the defendant's flight could be used as evidence of consciousness of guilt. We disagree.

Atkinson testified to the fact that he had seen the defendant on Starr Street in New Haven every day for several months prior to the shooting, but that he never saw the defendant again in that particular location after the shooting. The defendant asserts that this testimony regarding the defendant's alleged flight was irrelevant because the state failed to demonstrate that the defendant knew that he was wanted by the police and that his alleged flight was sudden and unplanned. We are unaware of any legal authority that puts such a burden on the determination of relevance. Conversely, because evidence is admissible only if it is relevant, "[t]he trial court is given *broad discretion* in determining the relevancy of evidence and its decision will not be disturbed absent a clear abuse of that discretion." (Emphasis added; internal quotation marks omitted.) *Baxter* v. *Cardiology Associates of New Haven, P.C.*, 46 Conn. App. 377, 390, 699 A.2d 271, cert. denied, 243 Conn. 933, 702 A.2d 640 (1997), quoting *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 569, 657 A.2d 212 (1995).

With respect to whether Atkinson's testimony regarding the defendant's alleged flight was properly found to be relevant by the trial court, we have previously stated that "[e]vidence of flight may be used to infer consciousness of guilt. . . . The probative value of evidence of flight depends upon all the facts and circumstances and is a question of fact for the jury." (Citation omitted; internal quotation marks omitted.) *State* v. *Tyson*, 43 Conn. App. 61, 66, 682 A.2d 536, cert. denied, 239 Conn. 933, 683 A.2d 401 (1996). Furthermore, "[i]t is well established that flight of a person accused of a crime is an element which, when considered with other facts of the case, is relevant to the accused's guilt." (Internal quotation marks omitted.) *State* v. *Atkinson*, 235 Conn. 748, 765, 670 A.2d 276 (1996), quoting *State* v. *Bell*, 188 Conn. 406, 412, 450 A.2d 356 (1982). Accordingly, because we "will indulge every reasonable presumption in favor of the trial court's ruling"; *State* v. *Wideman*, 36 Conn. App. 190, 197, 650 A.2d 571 (1994), cert. denied, 232 Conn. 903, 653 A.2d 192 (1995); we conclude that the trial court properly exercised its discretion in finding that Atkinson's testimony regarding the defendant's alleged flight was relevant.

We next address whether the trial court properly exercised its discretion in determining that the relevant evidence of the defendant's alleged flight was more probative than prejudicial. " 'Because of the difficulties inherent in [the probative-prejudicial] balancing process, the trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done.' " *State* v. *McClendon*, 45 Conn. App. 658, 677, 697 A.2d 1143, cert. granted on other grounds, 243 Conn. 943, 704 A.2d 799 (1997), quoting *State* v. *Howard*, 187 Conn. 681, 685, 447 A.2d 1167 (1982).

In the present case, the trial court sanitized Atkinson's testimony of any references to drug dealing at the

Starr Street location before it was presented to the jury in an effort to reduce the prejudicial effect of the testimony. Furthermore, references to the defendant's drug dealing activities were previously admitted during trial without objection from the defendant. Specifically, the defendant did not object to the admission into evidence of either (1) a portion of Kelly's tape-recorded statement that mentioned the defendant's drug dealing or (2) the testimony of Faison, which also mentioned the defendant's regular presence on Starr Street.

We conclude, therefore, that there was no abuse of discretion by the trial court in either admitting evidence or instructing the jury regarding the defendant's alleged flight as consciousness of guilt evidence.

IV

The defendant's final claim is that the trial court improperly precluded him from eliciting testimony from Detective Joseph Greene of the New Haven police department that would have buttressed the defense of mistaken identification. After recalling Greene, the defense attempted to question him as to whether an employee of the Oasis bar to whom Greene had spoken on the night of the shooting had seen the gunman, or whether anyone else who was present at the bar that night was able to identify the gunman. The trial court sustained the state's multiple hearsay objections, despite the defendant's protestations that the questions did not call for hearsay answers because Greene, as an investigating officer, could answer from personal knowledge. While the defendant does not dispute that his questioning of Greene called for hearsay responses, he nonetheless asserts that the trial court improperly precluded this line of questioning because the information

that the defendant hoped to elicit from Greene was relevant and critical to his mistaken identification defense.

The defendant now claims that his constitutional rights to due process, to a fair trial and to present a defense were violated by the trial court's decision to preclude his further questioning of Greene. Because this claim is unpreserved, the defendant seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[7] For the reasons stated below, we find that the defendant's claim does not satisfy the *Golding* requirements for review.

Initially, the first prong of *Golding* review requires that there be an adequate record available for the reviewing court. It is well settled that it is the appellant's responsibility to ensure that such an adequate appellate record exists. *State* v. *Denby*, 35 Conn. App. 609, 618, 646 A.2d 909 (1994), aff'd, 235 Conn. 477, 668 A.2d 682 (1995). We have previously stated that if an appellant wants "to provide this court with an adequate appellate record, he should . . . [present] an offer of proof. . . . In the absence of an appropriate offer of proof, this court cannot speculate as to what line of questioning defense counsel intended to follow. . . . Without an adequate record on which to review the rulings of the trial court, this court must assume that the trial court acted properly." (Citation omitted; internal quotation marks omitted.) Id. The defendant made no offer of proof regarding the line of questioning that was

---

[7] In *Golding*, the court held: "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

intended for Greene. We do not view the record as adequate to satisfy the first prong of *Golding*.

Even if the record could be viewed as adequate, the second prong of *Golding* is not satisfied because our Supreme Court has held that "[a]lthough an accused does, of course, have a federal constitutional right to present a defense, the right to present relevant testimony is not without limitation. . . . [T]he proposition that the Due Process Clause guarantees the right to introduce all relevant evidence is simply indefensible . . . . Rules for the admission and exclusion of evidence should be found offensive to notions of fundamental fairness embodied in the United States Constitution only when, (1) without a rational basis, they disadvantage the defendant more severely than they do the State, or (2) [they] arbitrarily exclude reliable defensive evidence without achieving a superior social benefit." (Citations omitted; internal quotation marks omitted.) *State* v. *Porter*, 241 Conn. 57, 133–34, 698 A.2d 739 (1997).

The defendant does not argue that the hearsay rules are either irrational, arbitrarily exclusionary or that they disadvantage him more severely than they do the state. Because the hearsay rules are in no way offensive to or inconsistent with the constitutional notions of fundamental fairness, we conclude that the defendant's claim is not one of constitutional magnitude. Accordingly, because the requirements for *Golding* review are not met, we decline to review this claim.

The judgment is reversed only as to the conviction of violating § 29-35 and the case is remanded with direction to render a judgment of acquittal as to that count. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.