******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* MICHAEL MARK
(AC 38566)

Lavine, Beach and Keller, Js.*

*Argued October 27, 2016—officially released January 17, 2017*

(Appeal from Superior Court, judicial district of
Waterbury, Cremins, J.)

*Alice Osedach*, assistant public defender, for the
appellant (defendant).

*Michele C. Lukban*, assistant state's attorney, with
whom, on the brief, were *Maureen Platt*, state's attor-
ney, and *Cynthia S. Serafini* and *Terence D. Mariani*,
senior assistant state's attorneys, for the appellee
(state).

*Opinion*

LAVINE, J. The defendant, Michael Mark, appeals from the judgment of conviction, rendered after a jury trial, of one count each of murder in violation of General Statutes § 53a-54a (a), felony murder in violation of General Statutes § 53a-54c, robbery in the first degree in violation of General Statutes § 53a-134 (a) (1), robbery in the first degree in violation of § 53a-134 (a) (3), and conspiracy to commit robbery in violation of General Statutes §§ 53a-48 (a) and 53a-134.[1] On appeal, the defendant claims that the trial court (1) abused its discretion by excluding evidence that supported his third party culpability defense, and (2) violated his constitutional right against double jeopardy guaranteed by the fifth and fourteenth amendments to the United States constitution and article first, §§ 8 and 9, of the constitution of Connecticut. We affirm the judgment of the trial court.

This appeal arises from the robbery and murder of Arnaldo Gonzalez, the victim, who was bludgeoned to death with a rock. The state's separate appeal, *State* v. *Mark*, 170 Conn. App. 241,     A.3d     (2017), also released today, sets forth the facts that the jury reasonably could have found and the pertinent procedural history. Additional facts pertaining to the defendant's claims will be set forth as necessary.

I

First, the defendant claims that the trial court abused its discretion by granting the state's motion in limine to preclude him from presenting evidence of four other robberies that took place in Waterbury at approximately the same time as the robbery in the present case. Specifically, the defendant argues that the evidence supported his third party culpability defense and that similarities among all of the robberies "establish[ed] a connection" between the perpetrators of the other robberies and the robbery in the present case. The state argues that the trial court did not abuse its discretion because the proffered evidence "failed to establish a direct connection between the charged offenses and [the] other robberies . . . ." We agree with the state.

The following additional facts are relevant to this claim. On April 21, 2014, the day before the trial began, the state filed a motion in limine asking the court to preclude the defense from introducing into evidence any testimony regarding four other robberies that had occurred in Waterbury on November 1 and 2, 2010. The state also moved to require the defendant to make an offer of proof prior to the introduction of any evidence that would support a third party culpability defense, namely, that any evidence that the perpetrators of the four other robberies committed the robbery and murder of the victim. The state argued such evidence was irrelevant, not probative, and prejudicial. The court reserved

its decision on the motion in limine.

Throughout the state's case-in-chief, the defendant repeatedly attempted to put into evidence proof of the other robberies. First, during cross-examination of the state's first witness, David Vaught, who maintained maps for the city of Waterbury, the defendant attempted to introduce into evidence maps that showed the locations of four other robberies that took place in the early morning of November 2, 2010. Outside the presence of the jury, the defendant stated that he had subpoenaed police reports of other robberies and argued that the maps of the locations of the robberies were relevant to show the close proximity of the other robberies to the robbery in the present case. The defendant argued that there were similarities among the robberies that made evidence of the other robberies relevant to his third party culpability defense.[2] The robberies were claimed to be similar in that: (1) they took place at approximately the same time and in the same vicinity as the robbery in the present case, (2) they all involved an assault on a victim, (3) the other robberies were committed by three people with a long history of assaults, (4) police found a cigarette butt in the van that the perpetrators of the four robberies used that was the same brand of cigarette found at the murder scene, and (5) the police initially investigated all of the robberies as having been perpetrated by the same individuals. He argued that these facts, which were not yet in evidence, tended to show that a third party or parties, namely, the perpetrators of the other robberies, committed the robbery and murder of the victim. The defendant did concede, however, that there was no DNA evidence linking the perpetrators of the four robberies to the crime scene in the present case. The court sustained the state's objection on the ground that the maps were irrelevant because it did not "see the connection" between the four other robberies and the robbery in the present case. It did state, however, that it would reconsider its ruling if there was "further evidence developed that [made the maps] relevant."

Second, the court conducted an in-camera inspection of the police reports the defendant subpoenaed to ensure that they were properly redacted pursuant to Practice Book § 4-7 and General Statutes § 1-210. The next day, the court provided copies of the reports to the parties with the appropriate redactions. It redacted the witness statements within the police reports that referenced the other robberies because defense counsel did not give a "further offer of proof with respect to the connection that could or does exist between these incidents and the matter here."

Third, the defendant attempted to introduce into evidence a portion of the autopsy report written by an investigator that contained witness statements that referenced the other robberies. The court excluded it

because the medical examiner did not rely on it in determining the victim's cause of death and because it constituted hearsay.

Finally, defense counsel sought to elicit testimony on cross-examination from Vanessa Vazquez that she saw one of the robberies take place at a certain time and at a certain location because this testimony would undermine the state's timeline of events. The court sustained the state's relevancy objection because "raising issues of the other robberies, even though they might be probative of the time that the individuals here were picked up . . . is likely to cause confusion for the jury," and "absent some kind of physical connection between this incident and the other incidents, [the court is] not going to allow that line of questioning."

On April 29, 2014, the defendant filed an objection to the state's motion in limine and gave an offer of proof in support of his third party culpability defense. The offer of proof included police incident reports for the other assaults and robberies, certified court reports relating to the cases involving the perpetrators responsible for the other robberies, and laboratory reports involving tests on evidence recovered from the other robberies. On April 30, 2014, after reviewing the defendant's objection and hearing arguments by the prosecutor and the defense, the court granted the state's motion in limine. The court explained that "the defendant has failed to offer any evidence directly linking a third party to the commission of the robbery at issue" and that "[t]he fact that other robberies occurred on the same date and in Waterbury and were within the central city area raises, at most, a bare suspicion that another person may have committed the subject robbery."

On appeal, the defendant argues that evidence of the four robberies should have been admitted because such evidence was relevant in giving "the jury an alternative theory as to who committed the crime." He argues that the "substantial" amount of evidence of the other robberies and the number of similarities between the other robberies and the robbery in the present case "does more than raise a bare suspicion that a third party committed the offense; it establishes a direct connection to the instant case."[3] When the court excluded this evidence, he claims, it foreclosed his opportunity to present his third party culpability defense, which deprived him of his constitutional right to present a defense.

The defendant opines that the court violated his constitutional rights. This matter is an evidentiary one, however, and will be treated as such. See *State* v. *Rosario*, 99 Conn. App. 92, 106, 912 A.2d 1064 ("[a]lthough the defendant frames the [third party culpability] issue on appeal as a constitutional violation, our ultimate determination rests on evidentiary grounds"), cert. denied, 281 Conn. 925, 918 A.2d 276 (2007). "The admis-

sibility of evidence of third party culpability is governed by the rules relating to relevancy. . . . No precise and universal test of relevancy is furnished by the law, and the question must be determined in each case according to the teachings of reason and judicial experience. . . . The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Eagles*, 74 Conn. App. 332, 337, 812 A.2d 124 (2002), cert. denied, 262 Conn. 953, 818 A.2d 781 (2003).

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." Conn. Code Evid. § 4-1. "[R]elevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter." (Internal quotation marks omitted.) *State* v. *West*, 274 Conn. 605, 625, 877 A.2d 787, cert. denied, 546 U.S. 1049, 126 S. Ct. 775, 163 L. Ed. 2d 601 (2005).

Specifically with regard to evidence of third party culpability, our Supreme Court has "recognized consistently that a defendant has a right to introduce evidence that indicates that someone other than the defendant committed the crime with which the defendant has been charged. . . . The defendant must, however, present evidence that *directly connects* a third party to the crime." (Emphasis added; internal quotation marks omitted.) *State* v. *Smith*, 280 Conn. 285, 303–304, 907 A.2d 73 (2006). "[E]vidence that establishes a direct connection between a third party and the charged offense is relevant to the central question before the jury, namely, whether a reasonable doubt exists as to whether the defendant committed the offense. Evidence that would raise only a bare suspicion that a third party, rather than the defendant, committed the charged offense would not be relevant to the jury's determination." (Internal quotation marks omitted.) *State* v. *Baltas*, 311 Conn. 786, 810–11, 91 A.3d 384 (2014). "It is not enough to [simply] show that another had the motive to commit the crime . . . ." (Internal quotation marks omitted.) *State* v. *Hedge*, 297 Conn. 621, 634–35, 1 A.3d 1051 (2010). Rather, evidence of motive may be relevant to establishing a third party culpability defense only "if other connecting evidence exists." *State* v. *Eagles*, supra, 74 Conn. App. 339.

We conclude that the court did not abuse its discre-

tion in granting the state's motion in limine to preclude the defendant from introducing evidence that supported a third party culpability defense. The defendant failed to offer any evidence that directly connected the perpetrators of the four robberies to the robbery in the present case. Instead, all of the evidence the defendant sought to admit merely established that other robberies took place at approximately the same time and in the same vicinity as the robbery in the present case. Thus, without any evidence that *directly* connects the perpetrators of the other robberies to the robbery in the present case, evidence of similarities between the other robberies and the robbery in the present case is not sufficient to support a third party culpability defense. See *State* v. *Ferguson*, 260 Conn. 339, 348, 355, 796 A.2d 1118 (2002) (photograph depicting third party who looked similar to defendant and who was near crime scene at approximately the same time that crime took place was inadmissible without other evidence directly connecting third party to crime); *State* v. *Ortiz*, 252 Conn. 533, 564–65, 747 A.2d 487 (2000) (while proffered evidence may have provided third party with motive and means to commit charged crime, defendant failed to establish direct connection between third party and charged crime). Admitting such evidence would prompt the jury to engage in unwarranted speculation. The trial court properly granted the state's motion in limine.

## II

The defendant's second claim is that his convictions of two counts of robbery in the first degree violate his constitutional right not to be placed in double jeopardy as guaranteed by the fifth and fourteenth amendments to the United States constitution and article first, §§ 8 and 9, of the constitution of Connecticut. Specifically, the defendant claims that § 53a-134 (a) (1) is a lesser included offense of § 53a-134 (a) (3) because he could not have caused serious injury to the victim without first using a dangerous instrument. The state argues that the charges are separate and distinct offenses because "it is possible to commit an offense under § 53a-134 (a) (3) without first having committed an offense under § 53a-134 (a) (1)." We agree with the state.

The defendant did not raise this claim at trial, and it, therefore, is not preserved for review. He seeks review of his unpreserved claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged

constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original; footnote omitted.) Id.; see also *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1118 (2015) (modifying third prong of *Golding* by eliminating word "clearly" before words "exists" and "deprived"). Because the record is adequate for review and the claim of a violation against double jeopardy alleges a fundamental right, the defendant's claim is reviewable under *Golding*. We conclude, however, that the defendant's claim fails because a constitutional violation does not exist.

The following additional facts are relevant to this claim. Section 53a-134 provides in relevant part: "(a) A person is guilty of robbery in the first degree when . . . he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime . . . or (3) uses or threatens the use of a dangerous instrument . . . ."

The substitute information filed by the state alleged in relevant part: "Count Three: And the above said senior assistant state's attorney further accuses and charges that the defendant said Michael Mark did commit the crime of Robbery in the First Degree in violation of . . . § 53a-134 (a) (1), and charges that, on or about November 2, 2010, in the early morning hours, at or near 424 Baldwin Street, in the City of Waterbury, Connecticut, the said Michael Mark, in the course of committing a robbery, or of immediate flight therefrom, he or another participant in the crime caused serious physical injury to any person who was not a participant in the crime, to wit: Arnaldo Gonzalez.

"Count Four: And the above said senior assistant state's attorney further accuses and charges that the said Michael Mark did commit the crime of Robbery in the First Degree in violation of . . . § 53a-134 (a) (3), and charges that, on or about November 2, 2010, in the early morning hours, at or near 424 Baldwin Street, in the City of Waterbury, Connecticut, the said Michael Mark, in the course of committing a robbery, or immediate flight therefrom, he or another participant in the crime used and threatened the use of a dangerous instrument, to wit: a rock and/or a shod foot."

The jury found the defendant guilty on all counts, including both counts of robbery in the first degree. The court sentenced the defendant for his conviction under § 53a-134 (a) (1) to twenty years imprisonment and for his conviction under § 53a-134 (a) (3) to twenty years imprisonment. The court sentenced the defendant to forty-eight years imprisonment for the murder conviction and ordered the robbery convictions to run concurrently with the murder conviction.

On appeal, the defendant argues that "the [two robbery in the first degree] counts are one in the same and

conviction and punishment on both violated the double jeopardy clause." Because the autopsy report showed that the victim died from blunt force trauma to his head, it was impossible for the defendant to cause a serious physical injury to the victim without first using a dangerous instrument. The defendant argues, therefore, that his "conviction for robbery in the first degree, § 53a-134 (a) (1) was a lesser included offense of the conviction for robbery in the first degree, § 53a-134 (a) (3)." Thus, the court should vacate the defendant's conviction on the lesser included offense. We do not agree.

"The standard of review to determine whether the defendant's constitutional right against double jeopardy was violated is de novo because it is a question of law." (Internal quotation marks omitted.) *State* v. *Guzman*, 125 Conn. App. 307, 319, 7 A.3d 435 (2010), cert. denied, 300 Con. 902, 12 A.3d 573 (2011). "The fifth amendment to the United States Constitution provides in relevant part: No person shall . . . be subjected for the same offense to be twice put in jeopardy of life or limb . . . . The double jeopardy clause of the fifth amendment is made applicable to the states through the due process clause of the fourteenth amendment." (Internal quotation marks omitted.) *State* v. *Alvaro F.*, 291 Conn. 1, 5–6, 966 A.2d 712 (2009). "In the context of a single trial, the double jeopardy analysis is a two part process. . . . First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense." (Citation omitted; internal quotation marks omitted.) *State* v. *McColl*, 74 Conn. App. 545, 567, 813 A.2d 107, cert. denied, 262 Conn. 953, 818 A.2d 782 (2003).

With regard to the second step, "[t]raditionally we have applied the [test set out in *Blockburger* v. *United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932)] to determine whether two statutes criminalize the same offense . . . . Under that test, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. . . . This test is a technical one and examines only the statutes, charging documents, and bill of particulars as opposed to the evidence presented at trial. . . . Thus, [t]he issue, though essentially constitutional, becomes one of statutory construction. . . . [I]f two offenses stand in the relationship of greater and lesser and included offense, [however] [t]he greater offense is . . . by definition the same for purposes of double jeopardy as any lesser included offense included in it. . . . If it is possible to commit the greater offense in the manner described in the information without having first committed the lesser offense, then the lesser is not an included offense." (Citation omitted; internal quotation marks omitted.) *State* v. *Underwood*, 142 Conn. App. 666, 681–

82, 64 A.3d 1274, cert. denied, 310 Conn. 927, 78 A.3d 146 (2013).

"Our analysis of double jeopardy claims does not end, however, with a comparison of the offenses. The *Blockburger* test is a rule of statutory construction, and because it serves as a means of discerning [legislative] purpose, the rule should not be controlling where . . . there is a clear indication of contrary legislative intent." (Internal quotation marks omitted.) *State* v. *Perez*, 78 Conn. App. 610, 641, 828 A.2d 626 (2003), cert. denied, 271 Conn. 901, 859 A.2d 565 (2004).

In the present case, the first prong of the double jeopardy test is satisfied because the defendant's conviction of two counts of robbery in the first degree arose out of the same act or transaction: the defendant robbed the victim and killed him with a rock on November 2, 2010. The defendant's claim, however, does not satisfy the second prong because under *Blockburger*, the two charges constitute separate offenses in that each provision requires proof of a fact which the other does not.

To convict the defendant under § 53a-134 (a) (1), the state was required to prove that the defendant actually caused "serious physical injury" to the victim, who was "not a participant in the crime." The state was not required to prove that the injury was caused by a dangerous instrument. To convict the defendant under § 53a-134 (a) (3), the state needed to prove that the defendant "used or threatened the use of a dangerous instrument." The state was not required to prove that the victim actually suffered serious physical injury. Thus, each of the counts in the information required that the state prove an element of a crime that the other crime does not include. Because each of the charged offenses require proof of an element that the other does not, we conclude that the defendant's right against double jeopardy for the same offense was not violated.

Furthermore, the defendant failed to meet his burden of proof demonstrating a clear legislative intent that contradicts the result of the *Blockburger* test. In support of his argument, the defendant cites to *State* v. *McColl*, supra, 74 Conn. App. 572, stating in his brief that "[s]ince robbery is a crime against the person the legislature did not intend multiple punishments for the single robbery of one victim." Yet, this court has recognized that "the legislature has shown that it knows how to bar multiple punishments expressly when it does not intend such punishment"; (internal quotation marks omitted) *State* v. *Underwood*, supra, 142 Conn. App. 684; and that "[§] 53a-134 contains no language indicating the legislature's intent to bar multiple punishments . . . ." Id.; see *State* v. *Hill*, 237 Conn. 81, 100, 675 A.2d 866 (1996) (when "each of the two charges requires proof of a fact that the other does not, it may be presumed that the legislature did not intend to prohibit multiple

punishments for the conduct underlying the two charges"). The defendant's claim, therefore, fails, and he cannot prevail on his unpreserved double jeopardy claim.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The jury also found the defendant guilty of one count of tampering with evidence in violation of General Statutes (Rev. to 2010) § 53a-155 (a). During sentencing, the trial court granted the defendant's motion for judgment of acquittal as to this count. The state appealed from the judgment of acquittal, and this court reversed the trial court's judgment. See *State* v. *Mark*, 170 Conn. App. 241,     A.3d     (2017).

[2] The defendant also argued that evidence of the four robberies was relevant in discrediting the state's timeline of the events because defense counsel anticipated that Vanessa Vazquez, a state's witness, would testify that she saw one of the robberies take place at a time that made the state's timeline inconsistent with the time of the victim's death.

[3] The defendant also sets forth additional arguments that we deem to be unpersuasive. He argues that "the state's circumstantial case [which] relied heavily on the credibility of its witnesses . . . increased the relevancy" of the proffered evidence. Without any evidence that establishes a direct connection between the third party and the robbery in the present case, however, any weaknesses in the state's case do not render evidence of the other robberies more relevant to prove "that others had both the motive and opportunity to commit the crime in this case." The defendant has failed to cite to any case law that indicates otherwise.

In addition, the defendant argues that the trial court used an improper standard in ruling on its evidentiary claims when it stated that the defendant was required to show a "physical connection" between the other robberies and the robbery in the present case. While the court did in fact incorrectly state that the defense was required to show a "physical connection" between the third party and the robbery in the present case, a review of the entire record gives us no indication that the court improperly foreclosed the defendant from introducing evidence that directly connected the robberies to the one in the present case. In its ruling on the state's motion in limine, moreover, the court properly stated that defense counsel failed to show a "*direct connection*" between the proffered evidence and the robbery in the present case.